# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | NO. 4:21-CR-00276 |
| | : | |
| v. | : | (Judge Matthew Brann) |
| | : | |
| **COLTON OPPEL** | : | (Electronically Filed) |

## BRIEF IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT

### I.    INTRODUCTION

The charges in this matter arise from a search on January 15, 2020, by Columbia County, Pennsylvania probation officers and other law enforcement officers which yielded a number of firearms, including a shotgun with a shortened barrel, and another with an obliterated serial number at the Defendant, Colton Oppel's residence, an outbuilding, and the Defendant's grandmother's residence. The search was related to purported violations of defendant's parole supervision for the offense of Recklessly Endangering Another Person, a misdemeanor of the second degree under 18 Pa. C.S. § 2705.

As an offense which disqualifies the defendant from the privilege of possessing a firearm, Oppel is alleged to have been convicted in 2012 for the offense of Theft by Unlawful Taking, a Misdemeanor of the First Degree, under 18 Pa. C.S.A. § 3921(a) for which the sentence imposed was 45 days minimum to 18 months maximum in the Columbia County Prison.  The maximum possible sentence

for a misdemeanor of the first degree under Pennsylvania law is five years' imprisonment.

On September 15, 2021, a Middle District of Pennsylvania Grand Jury returned an indictment against Colton Oppel charging twenty-five counts of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g), one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k), and one count of possession of a firearm which is not registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d). On September 21, 2021, Defendant appeared before United States Magistrate Judge William I. Arbuckle for an initial appearance and arraignment, pleaded not guilty and was detained.

Oppel has filed a motion to dismiss the Indictment, alleging that the restrictions set forth in the charges are facially unconstitutional, and furthermore are unconstitutional as applied because they are not consistent with the nation's historical tradition of firearm regulation.

## II.     LEGAL BACKGROUND

Section 922(g)(1) provides:

> It shall be unlawful for any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Section 922(k) provides:

> It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered, or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

Finally, 26 U.S.C. § 5861(d) provides that it is unlawful "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

The Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) set out a standard for applying the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen* at 2129–30 (2022). Courts may not assess the costs and benefits of firearm restrictions, "instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

### III. ARGUMENT

**A. 18 U.S.C § 922(g) is unconstitutional on its face.**

Nearly one year after *Bruen* was decided, the Third Circuit issued an *en banc* decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023). In that opinion, Bryan Range was held to remain among "the people" protected by the Second Amendment despite his false statement conviction. Because the Government did not carry its burden of showing that our Nation's history and tradition of firearm regulation support disarming Range," Section 922(g)(1) was held to violate the Second Amendment in an as-applied challenge.

While the *Range* majority stated that its holding was a "narrow one," *Range*, 69 F.4th at 106, the application of the court's reasoning results in far broader applications, as recognized by the *Range* dissents. See *id*. at 113 (Shwartz, J., dissenting) ("the analytical framework [the majority has] applied to reach their conclusion renders most, if not all, felon bans unconstitutional."); *id*. at 116 (Shwartz, J. dissenting) (the majority's ruling "rejects all historical support for

disarming any felon"); *id*. at 188 n.16 (Krause, J., dissenting). The *Range* majority also provided an extensive discussion of the lack of historical tradition of felon disarmament. See *id*. at 103 to 106; see also *United States v. Bullock*, -- F. Supp. 3d --, 2023 WL 4232309 (S.D. Miss. June 28, 2023).

Whether Colton Oppel is like Mr. Range in terms of his prior felony equivalent conviction or not, the Government cannot carry its burden that permanent felon disarmament is consistent with the historical tradition of firearms regulation in this country. See *Range*, 69 F.4th n.9 (". . . the Government did not carry its burden to provide a historical analogue to permanently disarm someone like Range, whether grounded in dangerousness or not.").

As such, 18 U.S.C. § 922(g) is unconstitutional on its face and the Indictment should be dismissed with prejudice.

**B. 18 U.S.C. 922(g) is unconstitutional as applied to Defendant.**

In addition to considering the facial validity of the statute, the Court must consider whether the statute is unconstitutional on an as-applied basis to the Defendant, consistent with the holding in *Range*.  Here, Oppel is "one of the people" who possess Second Amendment rights, given the sole prior offense which purportedly places the defendant in the crosshairs of 922(g)- a misdemeanor theft offense.  Theft by Unlawful Taking is defined as under 18 Pa. C.S. § 3921 as

follows: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." There are no elements of violence or dangerousness involved. Theft is a misdemeanor of the first degree if the value of the stolen property is at least $200 up to and including $2000 pursuant to 18 Pa. C.S. §3903. A person convicted of stealing property valued at less than $200 would not be disqualified from possession of a firearm because the maximum possible sentence under Pennsylvania law would be two years, or less for offenses graded as misdemeanors of the second or third degree (two years and one year, respectively).

   Firearm regulation in the era of the Second Amendment's ratification disarmed individuals who "posed a potential danger" to others. *United States v. Turan Ames*, No. 23-178, 2023 U.S. Dist. LEXIS 150982, at *7-8 (E.D. Pa. Aug. 28, 2023), citing *Range*, 69 F.4th at 109-110 (Ambro, J., concurring); *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023) (concluding "that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms [and] [w]hether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons.").

This court has decided *United States v. Reichenbach*, No. 4:22-CR-00057, 2023 U.S. Dist. LEXIS 160684 (M.D. Pa. Sep. 11, 2023), denying facial and as applied challenges to 922(g)(1). *Reichenbach* is distinguishable from Oppel on an as-applied basis due to the difference in their prior disqualifying convictions: this Court held that there were relevantly similar historical regulations on the possession of firearms which applied to certain "broad classes of individuals" deemed dangerous and disruptive to society and aimed at protecting the public from violence and disorder. *Id* at 18.

Reichenbach's prior convictions included four offenses of delivery or possession with intent to deliver controlled substances, and one count of conspiracy to deliver controlled substances. In contrast, Oppel's disqualifying offense of theft is deemed a felony under federal law, but lacks the element of presenting an unacceptable risk of dangerousness which would include him in the broad class of individuals deemed too dangerous or too disruptive to be permitted to own a firearm. In this aspect, Oppel's situation is more similar to that of Range, and all counts of 922(g) should be dismissed due to the lack of a historical precedent for his disarmament.

**C. 18 U.S.C. 922(k) is unconstitutional on its face.**

The restrictions on the possession of a firearm with an obliterated serial number are not a part of this country's historical tradition of firearm regulation, and this statute is unconstitutional on its face. The Second Amendment's plain text makes no distinction between possession of serialized or unserialized firearms, any more than it distinguishes between unspecified subsets of "the people." *Heller*, 554 U.S. at 579-581. Before the *Bruen* decision, the constitutionality of 922(k) was affirmed based on a finding by the courts that the means- prohibiting the removal of a serial number- was a reasonable restriction considering the goal of keeping firearms out of the hands of individuals whose possession would be contrary to the public interest, or in solving crimes. *See, e.g., United States v. Marzzarella*, 595 F. Supp. 2d 596, 602-03 (W.D. Pa. 2009), *Huddleston v. United States*, 415 U.S. 814, 824, 94 S. Ct. 1262, 39 L. Ed. 2d 782 (1974). The Third Circuit Court of Appeals has not had the opportunity to decide this specific issue since the *Bruen* decision has been announced.

This question was first addressed by a U.S. District Court post-*Bruen* in *United States v. Price*, 635 F. Supp. 3d 455 (S.D. W. Va. 2022, appeal filed, Fourth Circuit Court of Appeals, 22-4609). In a nonprecedential decision, the Southern District of West Virginia held that 922(k) does implicate individual Second Amendment rights, and therefore the statute is presumptively unconstitutional

unless the Government can show that it is consistent with the Nation's historical tradition of firearm regulation.

*Bruen* sets out two different inquiries for determining whether a challenged firearm regulation is consistent with our Nation's historical tradition. In cases where the provision in question "addresses a general societal problem that has persisted since the 18th century," the inquiry "will be fairly straightforward." In those cases, "the lack of a *distinctly similar* historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131. (emphasis added)

The regulations in both *Heller* and *Bruen* fell in this first category: the laws challenged in those cases were aimed at a problem – "handgun violence, primarily in urban areas" – that existed at the founding, and the Court therefore required a tight fit between those laws and historical precursors. *Id.*

In other cases, a challenged law implicates "unprecedented societal concerns or dramatic technological changes," or will be addressed to "challenges" that are "not . . . the same as those that preoccupied the Founders in 1791." In these cases, historical inquiry "may require a more nuanced approach, which will often involve reasoning by analogy" *Id* at 2132.  A much looser analogical match is permitted under these circumstances.

Finding that 922(k) does not address an unprecedented societal problem or dramatic technological change, the *Price* court went on to analyze the historical tradition using the "distinctly similar" standard with respect to serial numbers on firearms, finding that they were not broadly required until 1968. At that time, the transporting, sale or shipment of such firearms became illegal, and it was not until 1990 that the mere possession of firearms with obliterated serial numbers became unlawful. The *Price* court could not find a historical analogy to 922(k), and found that the functioning or dangerousness of a firearm is not impacted by the presence or absence of a serial number.

> "A firearm without a serial number in 1791 was certainly not considered dangerous or unusual compared to other firearms because serial numbers were not required or even commonly used at that time. While I recognize there is an argument, not made by the Government here, that firearms with an obliterated serial number are likely to be used in violent crime and therefore a prohibition on their possession is desirable, that argument is the exact type of means-end reasoning the Supreme Court has forbidden me from considering." *Price* at 464.

In so finding, U.S. District Judge Goodwin held that 922(k) was unconstitutional on its face.

For a variety of reasons, some of the federal district courts addressing this issue after *Price* have held that 922(k) does not violate the Second Amendment. See, eg. *United States v. Holton*, No. 3:21-CR-0482-B, 2022 U.S. Dist. LEXIS 200327 (N.D. Tex. Nov. 3, 2022) (Finding that analogous regulations existed to control the firearms trade, and required the registration and taxation of firearms); *United*

*States v. Dangleben*, No. 3:23-MJ-0044, 2023 U.S. Dist. LEXIS 177534 (D.V.I. Oct. 3, 2023) and *United States v. Walter*, No. 3:20-cr-0039, 2023 U.S. Dist. LEXIS 69163 (D.V.I. Apr. 20, 2023) (Both cases Holding that 922(k) is outside the scope of the Second Amendment, and further finding that reasonably analogous historical regulations existed); *United States v. Avila*, No. 22-cr-224-WJM-1, 2023 U.S. Dist. LEXIS 80239 (D. Colo. May 8, 2023) (Finding that the Second Amendment is not implicated; declining to decide historical analogy); *United States v. Patton*, No. 4:21-CR-3084, 2023 U.S. Dist. LEXIS 171232 (D. Neb. Sep. 26, 2023) (Finding that the Second Amendment is not implicated, finding also that analogous regulations existed in our nation's historical traditions).

Defendant Oppel argues that the conduct prohibited by 922(k) is implicated by the Second Amendment and requires a distinctly similar historical analogue, and urges the Court to apply the ruling in *Price* with respect to 922(k).

**D. 26 U.S.C. § 5861(d) is unconstitutional on its face.**

Defendant similarly challenges the charge under 26 U.S.C. § 5861, prohibiting individuals from possessing a firearm that has not been registered under the National Firearms Act, as unconstitutional under the Second Amendment because that regulation is not part of, nor analogous to, our nation's history of firearm

regulations, pursuant to *Heller* and *Bruen*. The "distinctly similar" analysis and reasoning from *Price*, should be applied as discussed above.

The Indictment alleges that the firearm in question is a firearm with a shortened barrel. Therefore, the first question to be decided is whether the possession of a shotgun with a shortened barrel is protected under the Second Amendment. Defendant alleges that the Government will be unable to sustain its burden in establishing that there is a distinctly similar regulation in the nation's historical tradition.

                                                                       Respectfully submitted,

                                                                       s/Helen A. Stolinas
                                                                       Helen A. Stolinas
                                                                       Pa ID # 66738
                                                                       The Mazza Law Group, P.C.
                                                                       2790 W. College Ave., Suite 800
                                                                       State College, PA 16801
                                                                       stolinas@mazzalaw.com
                                                                       814-237-6255