## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | No. 4:21-CR-00276 |
| v. | | (Chief Judge Brann) |
| COLTON OPPEL, | | |
| Defendant. | | |

### <u>MEMORANDUM OPINION AND ORDER</u>

#### DECEMBER 6, 2023

In 2021, Colton Oppel was indicted on 25 counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1)—each count relating to a different firearm allegedly found in Oppel's possession—one count of possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k), and one count of possessing a firearm that is not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d).[1]

The indictment alleges that Oppel has previously been convicted of a felony offense, thereby prohibiting him from possessing firearms.[2] The Government asserts that Oppel has been convicted of numerous offenses that are punishable by a term of imprisonment exceeding one year.[3] Of particular note, records confirm that, on August 21, 2019, the Court of Common Pleas of Columbia County sentenced Oppel

---

[1]   Doc. 1. The indictment also includes a forfeiture allegation. *Id.*
[2]   *Id.*
[3]   Doc. 37 at 2-3.

to a maximum term of one year imprisonment following his plea of guilty to recklessly endangering another person.[4] As part of that incarcerative sentence, Oppel was on parole at the time he allegedly committed the instance offense and was prohibited from possessing firearms; the Commonwealth of Pennsylvania moved to revoke his parole on March 19, 2020.[5]

Following the United States Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*,[6] Oppel filed a motion to dismiss the federal criminal indictment against him, arguing that, in light of *Bruen*, the charges against him must be dismissed.[7] The Government responds that the indictment should not be dismissed, as the relevant statutes are facially constitutional and constitutional as applied to Oppel since, *inter alia*, he was on parole at the time of the offense and was legally barred from possessing any firearms.[8]

The United States Supreme Court in *Bruen* explained the proper legal test for courts to apply when determining whether a law violates the Second Amendment. That test involves primarily an historical analysis:

> when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's

---

[4]   *See* Criminal Docket Sheet, *Commonwealth v. Oppel*, No. CP-19-CR-0000727-2018 (Pa. Com. Pl.).

[5]   *Id.*

[6]   142 S. Ct. 2111 (2022).

[7]   Docs. 35, 36.

[8]   Doc. 37.

historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[9]

As this makes clear, courts must engage in a two-step process to determine whether a criminal indictment violates an individual's Second Amendment rights. First, a court must "decide whether the text of the Second Amendment applies to a person and his proposed conduct."[10] "If it does, the government now bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'"[11]

At the second step, in circumstances where a law seeks to address a societal problem with no historical analogue, the Supreme Court has stated that "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check."[12] In all circumstances, the Second Amendment "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."[13] Therefore, when confronted with regulations "that were

---

[9]    *Bruen*, 142 S. Ct. at 2126.
[10]   *Range v. Att'y Gen. U.S. of Am.*, 69 F.4th 96, 101 (3d Cir. 2023).
[11]   *Id.* (quoting *Bruen*, 142 S. Ct. at 2127).
[12]   *Bruen*, 142 S. Ct. at 2133.
[13]   *Id.*

unimaginable at the founding," courts must reason "by analogy," which "requires a determination of whether the two regulations are relevantly similar" using "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense."[14]

As an initial matter, Oppel's facial challenge to 18 U.S.C. § 922(g) and 26 U.S.C. § 5861(d) fails for the reasons previously outlined by this Court in other cases.[15] With regard to Oppel's as-applied challenge, the Court need not reach the second step of the Second Amendment test, as the text of the Second Amendment does not apply to Oppel and his conduct.

Oppel unlawfully possessed firearms in contravention of the requirements of his parole; parole "is a variation on imprisonment of convicted criminals in which the State accords a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and conditions of his release."[16] It is well established that parolees are entitled to only a "conditional liberty properly dependent on observance of special parole restrictions."[17]

And, to the Court's knowledge, no defendant has yet had the temerity to argue that prisoners or parolees are entitled to possess firearms or other weapons while serving an incarcerative sentence, nor has any court found that incarcerated

[14]   *Id.* at 2132-33.
[15]   *See United States v. Reichenbach*, No. 4:22-CR-00057, 2023 WL 5916467, at *5-6 (M.D. Pa. Sept. 11, 2023).
[16]   *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998) (internal citation omitted).
[17]   *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).

individuals are entitled to weapons during their confinement. Such an argument

would be doomed to failure, as the Supreme Court of the United States has endorsed

prohibitions against the possession of even hard cover books in prison on the ground

that such books may be used to smuggle weapons into prison.[18] Although parolees

are entitled to greater freedoms than are prisoners, there is no basis upon which to

conclude that parolees maintain, without any abridgment whatsoever, their Second

Amendment rights.[19]

Oppel does not challenge as unconstitutional the underlying probationary

restrictions placed upon him, and he was properly prohibited from possessing the

firearms at issue here, even beyond the application of any federal criminal statute.

Because Oppel's Second Amendment rights were lawfully suspended by the terms

of his parole,[20] the text of the Second Amendment does not apply to Oppel and his

conduct, and his as-applied challenge fails.[21]

---

[18]  *Bell v. Wolfish*, 441 U.S. 520, 550-51 (1979).
[19]  *See Benson*, 2023 WL 8373161 at *4-5.
[20]  *Cf. Samson v. California*, 547 U.S. 843, 857 (2006) (holding "that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee").
[21]  *See United States v. Benson*, No. CR 22-225, 2023 WL 8373161, at *4-5 (E.D. Pa. Dec. 4, 2023); *United States v. Terry*, No. 2:20-CR-43, 2023 WL 6049551, at *4 (W.D. Pa. Sept. 14, 2023); *United States v. Shaw*, No. CR 22-1 (JEB), 2023 WL 3619416, at *7 (D.D.C. May 24, 2023).

Accordingly, **IT IS HEREBY ORDERED** that Oppel's motion to dismiss the indictment (Doc. 35) is **DENIED**.

BY THE COURT:

*s/ Matthew W. Brann*

Matthew W. Brann
Chief United States District Judge